## Commonwealth v. Reynolds et al.

*Criminal law—Search for weapons and liquors—Warrant not necessary—Loaded revolver in overcoat carried on arm—Evidence—Return of property.*

1. Under suspicious circumstances, a police officer has the right to search the person of any one for concealed weapons. It is not necessary to procure a warrant.

2. Where a loaded revolver is carried in the outside overcoat pocket and the overcoat is carried over the arm, the jury may properly return a verdict that the defendant is guilty of carrying concealed deadly weapons.

3. Where officers are told by a truck driver that certain trucks are loaded with liquor, and the officers smell the liquor about the trucks, it is proper for them to search the trucks and seize the liquor and use the same as evidence against the truck drivers, even though the officers do not have a search warrant. The clause in the United States and State Constitutions prohibiting "unreasonable searches and seizures" does not apply to this case.

Motion in arrest of judgment. Rule for return of certain evidence discovered without search warrant. Q. S. Franklin Co., Oct. Sess., 1923, Nos. 4, 5 and 6.

*Walter K. Sharpe* and *Garnet Gehr*, for motion and rule.

*C. H. Clippinger*, District Attorney, contra.

GILLAN, P. J., Nov. 27, 1923.—The above matters were all argued at one and the same time. Counsel on each side submitted one brief as to all the cases. We will endeavor to dispose of them in one opinion. The facts are not controverted in any material matter. This being a motion in arrest of judgment, it is based, of course, on matters found in the record. The verdicts were found from the testimony produced by the Commonwealth. The defendants offered no evidence. On the morning of April 25, 1923, the four defendants were breakfasting together at a restaurant in this town of Chambersburg. In the same restaurant was seated a member of the State Police, not in uniform. He was seated from eight to ten feet from the defendants. His attention was directed to the defendants by their conversation and their appearance. He thought one of them resembled the picture of a man charged with robbing a distillery in York County and for whom the officer was looking. The officer, leaving the restaurant, went to the headquarters of a detachment of the State Police in the second story of a banking building about half a block away. He there found Sergeant Kauffman, who had charge of police affairs here, and Corporal McCarthy, next in authority. To them he reported that four suspicious characters were at the restaurant. This private's name was Culver. McCarthy and Culver went at once to the restaurant and reached there just as these four defendants were coming out. McCarthy was in uniform. The officers stopped them on the sidewalk and felt over their persons to ascertain whether they had weapons concealed on them. They

4 D. & C.

found none. They then asked the four to accompany them to their head-quarters. The defendant Reynolds was carrying his overcoat on his arm. When they reached headquarters, Reynolds threw his overcoat on a chair. There was a thud. McCarthy picked up the overcoat and, examining it, found in the pocket a thirty-two Colt pistol, loaded. Before that time, but while in the headquarters, each man was questioned as to his name. They told how they came to town, that they were traveling in two trucks from New York to Cleveland; that they had left their trucks parked in a street close by; that Fields was in charge of the party. This was said in the presence of all of them. Fields himself made these statements in the presence of all of them, and there was no dissent. Immediately on the discovery of the pistol in the pocket of Reynolds he was placed under arrest on the charge of carry-ing concealed deadly weapons. At that time no warrant of arrest nor search warrant had been issued, and the officers arrested him without a warrant. The defendant contends that the search was illegal; that the seizure of the firearm was without warrant; that the arrest was illegal because the defend-ant was arrested without a warrant and before any information had been lodged against him. The defendant contends that the finding of the pistol in the overcoat pocket does not make out the crime. By Act of March 18, 1875, P. L. 33, it is provided that, "any person who shall carry a deadly weapon on his person with the intent unlawfully and maliciously to do injury to another person shall be deemed guilty of a misdemeanor, and the jury may infer such intent from the fact of the defendant carrying such weapon concealed." The contention of the defendant is that he was not carrying the weapon con-cealed on his person while carrying it in the overcoat over his arm. That this was not a carrying on the person within the meaning of the statute. While this is a penal statute and must be strictly construed in favor of the accused, we must not seek a loophole to enable the accused to escape. We have been pointed to no authority in Pennsylvania by which this exact ques-tion has been determined. The accused here contends that carrying it in an overcoat pocket, while not wearing the coat, is not a violation of the stat-ute. This was in the morning. The defendant was, at the time of the dis-covery of the pistol, carrying it on his arm. It is a fair presumption that, while traveling in the truck, he had been wearing it, that he had removed his overcoat for his greater comfort when he went to his breakfast. Suppose he had been carrying a weapon in his vest pocket, which garment is closely connected with the body, and because of the rise in temperature had removed his vest for his greater comfort and carried in on his arm. Would not that have been carrying a concealed weapon on the person? Can it be different because he carried it in his overcoat? The plain meaning of our statutes is that carrying a weapon concealed by the person in such a manner that it may be easily and promptly used, and yet others not discover its presence, consti-tutes the offence: Diffey v. State, 86 Ala. 66; 5 So. Repr. 576. In that case the court uses this language: "All the essential elements of the offence exist if an interdicted weapon is carried near the person and so connected therewith that the locomotion of the body necessarily carries the weapon, so that it may be promptly used when desired; as in the pocket of an overcoat carried on the arm, or in a hand-basket or other receptacle held by the hand. Such carrying one of the forbidden weapons concealed comes within the letter and purview of the statute, and constitutes the offence denounced: 89 N. C. 555." See, also, Sutherland v. Virginia, 65 S. E. Repr. 15; 23 L. R. A. (N. S.) 172. Under the statutes making it an element of the offence that it be carried on or about the person, it is so carried when it is in the hand or clothing of the

accused, or in a basket carried in his hand or upon or under the seat of the vehicle in which he is riding: 40 Ency. of Law and Procedure, 856.

An officer has the right to arrest without a warrant and upon view a person committing a misdemeanor in his presence. It seems to us well settled that a peace officer has the legal right to arrest one who is committing a misdemeanor in his presence, and this does not seem to be seriously contested by defendant. It has never been held that, under such circumstances as arose here, the officer is compelled to swear out a search warrant before searching the person for the purpose of ascertaining whether or not he is carrying concealed deadly weapons. We apprehend that, if the law requires that, persons who carry concealed deadly weapons would rarely be apprehended.

Immediately after the defendants had given their names and the location of their trucks, two of the officers proceeded to the trucks and in each truck they found two suitcases or hand-bags. Each defendant claimed one of the suitcases. Having been brought to the headquarters where the accused were, without any protest or objection on the part of the accused, the suitcases were opened and the contents examined. In the suitcase claimed by Reynolds were found three bottles of whiskey. The defendants represented to the officers that Reynolds and Rowland were traveling in the Reo truck and Hopkins and Fields in the White truck. In the White truck, on the seat, was found an automatic pistol, loaded. There was in both trucks a very perceptible odor of whiskey. After the suitcases were taken to the headquarters and opened, the four men were taken to jail. In the evening of that day, in pursuance of the fact that the officers had detected the odor of whiskey, and in pursuance of what Rowland told them, the trucks were searched and a large quantity of whiskey found in each of them. No search warrant was issued before the trucks were seized. At the time the officers, Kauffman and Culver, visited the trucks, they found that the manufacturer's number had been filed off the Reo truck, which had been driven by Rowland, accompanied by Reynolds. The operation of such truck was a misdemeanor under section 16 of the Act of June 30, 1919, P. L. 678, 688, and the officers had power, under the same act, to arrest the driver without a warrant. This driver was Rowland. Having this information, the officers took Rowland, who also had the certificate of ownership of this car, into custody. Thus, Reynolds was in legal custody because of carrying a concealed deadly weapon in the presence of the officers, and Rowland because of operating a motor-vehicle from which the manufacturer's number had been removed or obliterated. While they were in the jail, later on the same day, Rowland told the officers how they could find the whiskey concealed in the trucks. Acting on what they discovered by their sense of smell and on the information of Rowland, legally in custody, they discovered a large quantity of whiskey in each truck. For the illegal transfer of this whiskey they have been tried and convicted. No search warrant was issued authorizing or directing the search by which the whiskey was found.

We are not unmindful of the fact that the right of a citizen, under both the Federal and State Constitutions, protecting him from unreasonable search and seizure, is one of the most valuable rights of citizenship. It is one of the foundation stones of our liberty. While it is the bounden duty of every one connected with the administration of justice to see that no violation of our constitutional rights shall go unpunished, we must realize that the 18th Amendment is as much a part of our Constitution as is the Declaration of Rights or the provision against unreasonable search and seizure. We must not, in order to enforce one provision of the Constitution, violate another. We are bound to pay attention to the whole and reconcile one part with the other,

4 D. & C.

if there be any conflict. We have given a detailed account of the facts and circumstances surrounding this search and seizure. We are of opinion that justification of a search without a warrant depends so much on the facts and circumstances surrounding it that it is necessary to consider these facts in order to reach a proper conclusion.

The act under which these prosecutions are brought is the Act of March 27, 1923, P. L. 34, and is by the 1st section thereof declared to be an exercise of the power granted by Amendment 18 of the Constitution of the United States and of the police power of this Commonwealth for the protection of the public welfare, health, peace, safety and morals of the people of this Commonwealth, and all its provisions shall be properly construed for the accomplishment of these purposes.

Considering the case as under the Constitution of the United States, it has been held that, in order to justify an arrest by an officer without a warrant, it is not essential that, in making an arrest without a warrant, the officer must absolutely know that an offence is being committed. He must believe it is being done, and must believe it on the evidence of his own senses in the case of a misdemeanor: United States v. Rembert, 284 Fed. Repr. 996. Here, the officer, relying on his own sense of smell, knew that whiskey was concealed within these trucks. This knowledge, strengthened by what Rowland told him, gave him the right to search them without a search warrant; indeed, he would have been justified in making a search if Rowland had not told him what he did. Very many authorities might be cited on this subject. If the authority of United States v. Rembert, above cited, be the law, and we believe it is, there can be no doubt on the subject. We are also aided by the case of Com. v. Schwanda, decided by Judge Stewart in the court of Montgomery County, of which we have been furnished with a copy of his opinion. No constitutional rights of these defendants have been violated. The officers had a right to do what they did do. They had a right to seize the property they did seize, and offering it in evidence was in no sense a violation of the constitutional rights of the defendants. It follows that the motion in arrest of judgment must be denied and that the rule for the return of the evidence discovered without a search warrant must be discharged.

Now, Nov. 27, 1923, motion in arrest of judgment is denied, and the district attorney has leave to move for judgment.

From King Alexander, Chambersburg, Pa.